**United States District Court**
**Eastern District of Michigan**
**Southern Division**

United States of America,

     Plaintiff,

                              No. 18-cr-20686

v.

                              Hon. Denise Page Hood

Peter Nwoke,

     Defendant,

---

**Government's Combined Motion in Limine and Brief for Court Order**
**Requiring Attorney Testimony and Production of Documents**

---

The United States of America, by its undersigned attorneys, moves this Court *in limine* for a court order compelling attorney testimony and the production of documents related to information and communications which are not protected by attorney-client privilege, or as to which any attorney-client privilege that did exist has been waived or falls within the crime-fraud exception.

The government requested concurrence in this motion from defense counsel but did not receive a response.

## BACKGROUND

Following a hung jury, Dr. Peter Nwoke is scheduled for retrial next month with new counsel on charges stemming from (1) filing tax returns that underreported Dr. Nwoke's income and tax liability in tax years 2011, 2012 and

2013; and (2) failing to pay the underreported tax amounts listed on his returns in those same years.

In light of Dr. Nwoke's trial testimony and prior counsel's closing argument, evidentiary issues involving Attorney Clinton Mikel and his law firm, The Health Law Partners, are presented by Dr. Nwoke's retrial. Specifically, the availability of testimony by Attorney Mikel naming his client and identifying who hired and provided Attorney Mikel registration paperwork that he filed to incorporate Divine Medical Center, P.C., a medical practice directly associated with Dr. Nwoke through its bank account, and describing any additional roles Attorney Mikel played in relation to Divine Medical Center, P.C.

Significant to the instant prosecution, Divine Medical Center, P.C., received substantial Medicare payments and income in 2012 and 2013 which was not reflected on Dr. Nwoke's corresponding tax returns.

Divine Medical Center, P.C. was organized, registered, and incorporated with the Michigan Department of Licensing and Regulatory Affairs (LARA) in August 2012 by Attorney Clinton Mikel of the law firm "The Health Law Partners." The registration documents submitted by Attorney Mikel list Dr. Carmen Cardona (an employee of Dr. Nwoke) as both the registered agent and sole incorporator of Divine Medical Center, P.C. The fax header information on the

2

documents indicate they were faxed from Dr. Nwoke's office at roughly 11:20

p.m., then filed with LARA via fax by Clinton Mikel's office the following day.

At trial, Dr. Nwoke testified that Divine Medical Center, P.C., was created

by and belonged to Dr. Cardona, not Dr. Nwoke. Dr. Nwoke testified that Attorney

Clinton Mikel led a meeting with Dr. Cardona, Dr. Nwoke, and other individuals

present to discuss and form Divine Medical Center, P.C., and that Attorney Clinton

Mikel was in charge of the bank account for Divine Medical Center, P.C.

Among other assertions, Dr. Nwoke specifically testified that "[Attorney]

Mikel was Dr. Cardona's lawyer, who prepared those [LARA] documents" and

"Dr. Cardona hired Clinton Mikel . . . I don't have nothing to do with Divine

Medical Center." (R. 101: TR, PageID 2328, 2336). On direct examination, Dr.

Nwoke had testified that he did not make any money based on Dr. Cardona's

Medicare billings at Divine Medical [Center]. (R. 100: TR, PageID 2260).

In contrast, Dr. Cardona testified she had signed and handed Dr. Nwoke a

document for a different entity, and identified that signature page as the one

attached to the Divine Medical Center, P.C. paperwork was filed with LARA by

Attorney Mikel. (R. 106: TR, PageID 2610). Dr. Cardona denies attending any

meeting with a lawyer as Dr. Nwoke described, and at trial flatly denied ownership

and control over Divine Medical Center, P.C., its bank accounts, and any income it

received. (R. 106: TR, PageID 2601). Moreover, Dr. Cardona has recently

3

reviewed and signed a declaration, attached as Exhibit A, denying in detail the

assertions made by Dr. Nwoke at trial, and wholly disavowing any attorney-client

relationship with Attorney Clinton Mikel.

Attorney Mikel has been subpoenaed to testify at Dr. Nwoke's retrial about

who hired him and provided the registration paperwork Attorney Mikel filed with

LARA to incorporate Divine Medical Center, P.C., as well as any role he played

forming or helping manage Divine Medical Center, P.C.

Concomitant with that testimony, the government seeks Attorney Mikel's

production of documents, including correspondence, agreements, transmittal

records, billing records, payment records, and other communications, related to the

formation, incorporation, registration and management of Divine Medical Center,

P.C., by Attorney Mikel and The Health Law Partners.

As an officer of the court, Attorney Mikel has advised that, pursuant to

Michigan Rule of Professional Conduct 1.6 and what Attorney Mikel understands

to be his professional ethical obligations, in the absence of a court order, at trial he

will be compelled to invoke the rule of "client-lawyer confidentiality" as

recognized by the Michigan State Bar and refuse to testify because, upon inquiry,

Attorney Mikel's client has instructed Attorney Mikel to consider *everything* about

their relationship to be both secret and confidential, including the client's identity

and billing records, and to treat all of it "inviolate" regardless of whether attorney-client privilege separately applies.

Pursuant to Michigan Rule of Professional Conduct 1.6:

(a) "Confidence" refers to information protected by the client-lawyer privilege . . . and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which . . . would be likely to be detrimental to the client.

(b) Except when permitted under paragraph (c), a lawyer shall not knowingly:

(1) reveal a confidence or secret of a client;
. . .

(c) A lawyer may reveal:
. . .

(2) confidences or secrets . . . when required by law or by court order;

(3) confidences and secrets to the extent necessary to rectify the consequences of a client's . . . fraudulent act in the furtherance of which the lawyer's services have been used.

MRPC 1.6 (a).

Pointedly, as both the text of the rule and the official commentary for Michigan Rule of Professional Conduct 1.6 recognize, the rule of client-lawyer confidentiality only applies in situations "*other than* those where evidence is sought from the lawyer through compulsion of law," such as a subpoena and/or court order. MRPC 1.6, comment, emphasis added.

5

It is "[t]he client-lawyer privilege [which] applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client." *Id.*

## ARGUMENT

A. The bulk of the information sought from Attorney Mikel does not relate to "confidential communications" or "legal advice," and is not protected by attorney-client privilege. To the extent the privilege does apply to any of the information or communications sought from Attorney Mikel, it has been waived by Dr. Nwoke or falls within the crime/fraud exception.

The purpose of the attorney-client privilege is to encourage clients to communicate freely with their attorneys. *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997). The privilege is narrowly construed because it reduces the amount of information discoverable during a lawsuit. *Id.* The burden of establishing the existence of attorney-client privilege rests with the person asserting it. *United States v. Sadler*, 24 F.4th 515, 557 (6th Cir. 2022).

The privilege encompasses confidential communications between a lawyer and his client. *In re Grand Jury Subpoena*, 886 F.2d 135, 137 (6th Cir. 1989). The privilege does not impede disclosure of information except to the extent that that disclosure would reveal "confidential communications." *Collis*, 128 F.3d at 321.

Testimony and information about items such as *how* an attorney received a document, which does not, itself, reveal confidential communications from the client or legal advice from the attorney, are not covered by the attorney-client

6

privilege. *Id.* at 320. *Cf.*, *Sadler*, 24 F.4th at 558 (testimony by a defendant's former attorney about the timing and types of documents the attorney provided to the defendant was not protected by attorney-client privilege because the testimony did not reveal legal advice or client confidences).

In *Collis*, a defendant was prosecuted for obstruction after providing a forged letter to his attorney in support of a request for leniency. The forgery was discovered, and the government successfully asserted that the attorney-client privilege did not bar defense counsel's testimony in the later obstruction prosecution.

Beyond other bases on which it found the testimony permissible, the *Collis* Court held that "[t]estimony as to how [the attorney] received the letter . . . is not covered by the attorney-client privilege because there was no legal advice of any kind being sought in conjunction with the turning over of the letter." *Id.* at 320.

Relatedly, prior to the obstruction trial, Collis told investigating agents that someone else, perhaps the letter's author, had provided the letter to Collis' attorney. As a result, Collis' communications about the delivery and transmission of the letter to his attorney more broadly were no longer considered confidential. A client can waive the attorney-client privilege by voluntarily disclosing a communication he had with an attorney to a third party. *Cf. id.* at 320. The scope of the waiver turns on the scope of the disclosure, and the relevant inquiry is whether

the client's disclosure involves the same "subject matter" as desired testimony. *Id.* at 320.

Thus, on this basis, too, the Sixth Circuit concluded that, even if it had previously, the attorney-client privilege no longer applied. "[E]ven were the turning over of the letter covered by the privilege, Collis waived it when he stated that he assumed [the author] had . . . returned the revised letter to [his attorney] . . . The attorney-client privilege does not forbid an attorney from exposing his client's lie where the client has revealed the lie to a third party." *Id.* at 321.

1. The manner and timing by which Attorney Mikel received the registration paperwork for Divine Medical Center is not privileged.

By all known accounts, the registration paperwork for Divine Medical Center that Attorney Mikel received was provided for the purpose of disclosing and filing that paperwork with LARA, which he did, not for the purpose of obtaining legal advice. Thus, like in *Collis*, information about how and when Attorney Mikel received that paperwork "is not covered by the attorney-client privilege[,] because there was no legal advice of any kind being sought in conjunction with the turning over of the letter." *Id.* at 320.

Instead, the documents were provided for Attorney Mikel to disclose to someone else, undermining any suggestion the documents were provided in confidence. *Cf. United States v. Hubbard*, 16 F.3d 694, 697 n.3 (6th Cir. 1994) (Information elicited from defendant's bankruptcy attorney was not protected

"because what [defendant] communicated to his attorney was to be conveyed to . . . the court via a written pleading . . . the privilege extends only to *confidential* communications, not *all* communications), *rev'd in part on other grounds*, 514 U.S. 695 (1995).

Equally, there is seemingly nothing intended to be confidential about the manner and timing by which Attorney Mikel received the paperwork. The manner and timing of Attorney Mikel receiving the paperwork is simply a relevant, contested fact that tends to identify who, in fact, provided the paperwork to Attorney Mikel and, in doing so, tends to show ownership and control of Divine Medical Center, P.C. Similar to *Collis*, this information also bears on Dr. Nwoke's credibility, and potential efforts to perpetrate a fraud, but also like in *Collis*, that does not make the information confidential.

2.  <u>The identity of Attorney Mikel's client or clients vis-à-vis Divine Medical Center and the associated payment of Attorney Mikel's fees is not privileged.</u>

The identity of a client is not within the ambit of the attorney-client privilege, with limited exceptions. *In Re Grand Jury Investigation, No. 83-2-35*, 723 F.2d 447, 451 (6th Cir. 1983). Equally, the receipt of fees by an attorney is not usually within the ambit of the attorney-client privilege, because the payment of a fee is not normally a matter of confidence or a communication. *United States v. Haddad*, 527 F.2d 537, 539 (6th Cir. 1975).

9

The "legal advice exception" that brings client identity within the scope of attorney-client privilege is recognized where the identity of the client "would implicate the client in the very matter for which legal advice was sought in the first case." 723 F.2d at 452. In this regard, the "legal advice exception" is grounded in the notion of "protecting confidential communications," such as where naming a client reveals "an acknowledgment of guilt on the part of such client of the very offenses on account of which the attorney was employed." *Id*.

By contrast, hiring an attorney to file documents with a government entity in a *named* fashion is neither a confidential act nor a confidential communication, though it might result in a fraudulent act if the documents are filed in the name of an unwitting nominee.

Here, the information sought from Attorney Mikel is the identity of the person or persons who hired and paid him to file registration paperwork for Divine Medical Center, which, in and of itself, was not an act that would fall within the legal advice exception. Any negative implication that might attach to the identity of Attorney Mikel's client will arise simply from its possible inconsistency with prior statements by Dr. Nwoke or Dr. Cardona, and the possibility that it evidences the commission of a fraud. Even the "legal advice exception," however, may be defeated by a *prima facie* showing that the legal representation was secured in furtherance of a present or continuing illegality. *Id*.

10

3. If it occurred, the existence and content of a meeting about Divine Medical Center, P.C., that included Attorney Mikel and several *non-client* individuals would not be privileged.

Communications must be confidential for the attorney-client privilege to apply. *In re Grand Jury Subpoena*, 886 F.2d 135, 139 (6th Cir. 1989). Confidentiality, and application of the privilege, are destroyed by the presence of third parties when communications and legal advice are shared. "It is clear that the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party." *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998). Meanwhile, evidence merely that a meeting between an attorney and client occurred "does not invade the attorney-client relationship." *United States v. Tocco*, 200 F.3d 401, 422 (6th Cir. 2000).

As such, the information sought from Attorney Mikel about whether he participated in a meeting about Divine Medical Center, P.C., the identity of those present, and whether those individuals were clients, would not be covered by the attorney-client privilege. Moreover, if any of the individuals present were not clients, the substantive content and statements of the meeting likewise would not be covered by the privilege.

4. <u>Information sought concerning Attorney Mikel's role, duties, and responsibilities relative to Divine Medical Center, P.C., would describe actions, not communications, and would not be privileged.</u>

Courts exercise caution with regard to inquiries that might impede a client's ability to communicate freely with their attorneys and interfere with attorney-client privilege. The purpose and focus of the privilege, and its application, however, must properly remain just that, the protection of confidential communications between an attorney and client, not all interactions. In both analysis and application, the privilege should be "narrowly construed," and only impede disclosures that would reveal "confidential communications." *Collis*, 128 F.3d at 320, 321.

Information sought from Attorney Mikel describing his role, duties, and responsibilities would involve neither communications nor, pointedly, confidential communications. As such, it does not fall within the scope of attorney-client privilege.

5. <u>Dr. Nwoke's testimony waived any potential attorney-client privilege between he and Attorney Mikel concerning the creation, control and ownership of Divine Medical Center, P.C., and the transmission and filing of LARA registration documents on its behalf.</u>

A client can waive the attorney-client privilege by voluntarily disclosing a communication or, implicitly, lack of communication with an attorney. *Cf.*, *Collis*, 128 F.3d at 320. And "[t]he attorney-client privilege does not forbid an attorney

from exposing his client's lie where the client has revealed the lie to a third party."
*Id.* at 321.

On direct and cross-examination, Dr. Nwoke stated that Attorney Mikel represented and worked for Dr. Cardona, rather than Dr. Nwoke, and "prepared those incorporation [documents] and set up everything for Dr. Cardona," because "[s]he started Divine Medical Center," which was "her company, not mine." (R. 100: TR, PageID 2261; R.101: TR, PageID 2328-29). According to Dr. Nwoke, it was Dr. Cardona who "got Clinton Mikel to register Divine Medical Center," which was "hers from the very beginning." (R. 101: TR, PageID 2307, 2336). Dr. Nwoke further testified that he had "nothing to do with Divine Medical Center" and, as to the registration documents faxed to Attorney Mikel's office, did not "know what's happening there" because "[Divine Medical Center, P.C.] is not my corporation." (R. 101: TR, PageID 2335-36).

By comparison to *Collis*, where the defendant made out-of-court denials to agents about providing a letter to his attorney, here, Dr. Nwoke's denials about his relationship and providing documents to Attorney Mikel occurred under oath before the Court and jury. In light of those voluntary disclosures, any communications and interactions between Dr. Nwoke and Attorney Mikel concerning the same subjects are not protected by attorney-client privilege.

13

## CONCLUSION

The information, testimony, and production of documents that the government seeks to obtain from Attorney Mikel via subpoena are relevant and either items not protected from disclosure by attorney-client privilege, or items as to which any attorney-client privilege that did exist has been waived. Meanwhile, in the face of a subpoena and court order, the Michigan Rules of Professional Conduct and their corresponding professional ethical obligations will not preclude Attorney Mikel from providing the requested information, testimony, and production of documents at trial, regardless of his client's acquiescence.

Accordingly, for the reasons stated above, and in the interest of judicial economy and avoiding unnecessary delay at trial after a jury has been impaneled, the Court should now, in advance of trial, issue an order compelling Attorney Mikel's testimony and production of documents related to the formation, incorporation, registration, and management of Divine Medical Center, P.C., at Dr. Nwoke's forthcoming retrial.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/ Carl D. Gilmer-Hill*
CARL D. GILMER-HILL
Assistant United States Attorney

Dated: December 29, 2023

14