## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,                     Case No. 18-20686

v.                                        Hon. Denise Page Hood

PETER RAYMOND NWOKE,

            Defendant.

_____/

## ORDER REGARDING VARIOUS MOTIONS

## I.    BACKGROUND

This matter is before the Court on various motions filed by Defendant Peter Raymond Nwoke's which were previously heard and addressed at various hearings and at various times during the first trial held in this matter. Jury trial began in this matter on September 20, 2022 ending in a declaration of a mistrial on October 27, 2022.

On October 11, 2018, the grand jury issued an Indictment against Nwoke charging him with False Statement on Tax Returns, 26 U.S.C. § 7206(1) (Counts One (Tax Year 2011), Two (Tax Year 2012), Three (Tax Year 2013)), and Failure to Pay Income Taxes, 26 U.S.C. § 7203 (Counts Four (Tax Year 2011), Five (Tax Year 2012), Six (Tax Year 2013). Nwoke was arraigned on August 6, 2019 and was released on bond, pending trial.

## II.    MOTION TO DISMISS BASED ON INSUFFICIENT EVIDENCE (#52)

Nwoke asserts the Indictment alleges that he failed to report additional income on his tax returns for 2011, 2012 and 2013.  (ECF No. 52, PageID.303) He claims that it came to his attention that the Government's case is based on the fact that Marcus Jenkins stated that Nwoke sold prescriptions to Jenkins in 2007 or 2009, for about six months.  Nwoke asserts that based on this testimony, the Government's theory to the jury is that all the prescriptions that Nwoke wrote in 2011, 2012 and 2013 were sold, not to Jenkins, but to other, unknown and unidentified people.  (ECF No. 52, PageID.304) He argues this evidence is insufficient to prove that Nwoke obtained taxable income that was not reported, nor failed to report such taxes in 2011, 2012 and 2013.

An indictment, valid on its face, may not be dismissed on the ground it is based on inadequate or insufficient evidence. *United States v. Williams*, 504 U.S. 36, 54, (1992).   Rule 12(b) of the Rules of Criminal Procedure governs pretrial motions, where "[a] party may raise by pretrial motion any defense, objection, or request *that the court can determine without a trial on the merits*."  Fed. R. Crim. P. 12 (italics added).  Rule 12(b)(1) of the Federal Rules of Criminal Procedure, which cautions the trial judge that he may consider on a motion to dismiss the indictment only those objections that are "capable of determination without the trial of the general issue,"

indicates that evidentiary questions of this type should not be determined on such a motion. *United States v. Knox*, 396 U.S. 77, 83 n. 7 (1969). A motion to dismiss should be denied if it requires a pretrial test of the government's evidence. Allegations of the indictment essential to prove the offense charged and the pleas in answer to such allegations require a trial of the general issue. If the issue presented in a motion is that the allegations of the indictment are false and untrue, such issue is an issue of fact to be tried before the trier of fact. *Universal Milk Bottle Serv. v. United States*, 188 F.2d 959, 962 (6th Cir.1951), *see also* United States v. Short, 671 F.2d 178, 181-82 (6th Cir.1982).

Nwoke's Motion to Dismiss requires the Court to find facts that the evidence presented cannot meet the elements of the case. This determination is normally reserved for the trier of fact, in this case, before a jury. A court cannot consider a factual challenge to an indictment purporting to show a defect consisting solely of insufficient evidence to prove a particular charge. The Court denies Nwoke's Motion to Dismiss based on insufficiency of evidence.

## III.    MOTION TO DISMISS BECAUSE OF VERY LATE DISCOVERY (#56)

On August 22, 2019, Nwoke filed a Motion to Compel Discovery, alleging that based on the Standing Order for Discovery and Inspection and Fixing Motion Cut-Off Dates in Criminal Cases dated October 1, 2003, the Government was to have provided

Nwoke with discovery within ten days of arraignment, or August 16, 2019.  Nwoke withdrew the motion on February 20, 2020.

Nwoke filed a second Motion for Discovery on August 26, 2020, which was denied without prejudice because the Government agreed to arrange for Nwoke's counsel to view the requested documents.  (ECF Nos. 27, 29)  The parties have since entered into Stipulation and Orders adjourning the trial date for various reasons, including the COVID-19 pandemic.  On March 29, 2022, Nwoke filed his first Motion to Dismiss for not providing discovery (ECF No. 38), which was denied on August 2, 2022.  (ECF No. 45)

A defendant has no general constitutional right to discovery in a criminal case, *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977); but rather, any such discovery is governed by the provisions of Rule 16 of the Federal Rules of Criminal Procedure. In contrast to the broad scope of discovery in civil cases, the discovery available to a criminal defendant is relatively constricted, and is generally circumscribed by three rules: (1) Federal Rule of Criminal Procedure 16; (2) The Jencks Act, 18 U.S.C. § 3500; and (3) the doctrine set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). *See United States v. Presser*, 844 F.2d 1275, 1285, fn. 12 (6th Cir. 1988) (stating that in most criminal prosecutions, these three rules "exhaust the universe of discovery to which the defendant is entitled").

Rule 16 requires that the government disclose discovery materials related to the defendant upon the defendant's request. Specifically, the government must disclose oral, written, or recorded statements made by the defendant, the defendant's prior record, certain photographs, papers, documents, data, or places within the government's possession or control, examination and test results, and expert witnesses. Fed. R. Crim. P. 16(a)(1). Rule 16 does not authorize the discovery of internal government documents or any statements made by prospective government witnesses in addition to discovery required by the Jenck's Act. Rule 16 also does not require pretrial discovery of co-conspirators statements. *See, Presser*, 844 F.2d at 1281; *United States v. Boykins*, 1990 WL 143559, at *7 (6th Cir. Oct. 2, 1990) (holding "co-conspirator statements do not fall within the ambit of Rule 16(a)(1)(A)" as a defendant's statement and were therefore not discoverable pretrial).

The Jenck's Act provides that upon motion of the defendant, the government must produce "statements in its possession of witnesses who testify at trial." *United States v. Short*, 671 F.2d 178, 185 (6th Cir. 1982). The government need not provide statements or reports of witnesses until the witness "has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). The Sixth Circuit has held that the Jencks Act controls the timing of *Brady* disclosures if the materials relate to Jencks Act materials. *See United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994).

Under *Brady*, the government violates due process when it fails to disclose evidence related to guilt or sentencing in a criminal case that is favorable to the defendant. *Brady*, 373 U.S. at 87. The *Brady* rule extends to material that could be used to impeach the credibility of a government witness. *Giglio v. United States*, 405 U.S. 150, 154–55, (1972) (impeachment evidence falls within Brady "[w]hen the reliability of a given witness may well be determinative of guilt or innocence"). *Brady* only applies to "the discovery, after trial[,] of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976). During the course of the proceedings, "the government typically is the sole judge of what evidence in its possession is subject to disclosure. If it fails to comply adequately with a discovery order requiring it to disclose *Brady* material, it acts at its own peril." *Presser*, 844 F.2d at 1281.

The Eastern District of Michigan Standing Order for Discovery and Inspection and Fixing Motion Cut-Off Date in Criminal Cases, No. 03-AO-027, filed October 3, 2003, provides that "[w]ithin ten (10) days from the date of arraignment, ... government and defense counsel shall meet and confer, ..."  The Standing Order then states that upon *request* of defense counsel the government shall provide the information described in Federal Rules of Criminal Procedure 16(a)(1) and permit defense counsel to inspect, copy or photocopy any exculpatory evidence.  Nothing in

the Standing Order requires the disclosure of Jencks Act material prior to the time the Jencks Act requires its disclosure, nor shall the government counsel be required to automatically disclose the names of government witnesses.  Standing Order, pp. 1-2.

If a party fails to comply with Rule 16, the court may consider four options: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances. Fed. R. Crim. P. 16(d)(2).

The goal of discovery in criminal trials is to ensure a fair and thorough determination of defendant's guilt or innocence. In order to reach this goal, sanctions, such as suppression of evidence or dismissal of a case, must be viewed as an undesirable remedy reserved for cases of incurable prejudice or bad faith conduct demanding punishment by the court.  District courts should embrace the "least severe sanction necessary" doctrine, and hold that suppression of relevant evidence as a remedial device should be limited to circumstances in which it is necessary to serve remedial objectives.  *United States v. Maples*, 60 F.3d 244, 247 (6th Cir. 1995).

Motions to dismiss under Rule 12(b)(2) permit a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue[,]" and Rule 12(b)(3)(B) permits a court "at any time while the

case is pending ... [to] hear a claim that the indictment or information fails to ... state an offense ." A motion under Rule 12 is therefore appropriate when it raises questions of law rather than fact. *United States v. Ali,* 557 F.3d 715, 719 (6th Cir. 2009).

Based upon this Court's reading of Rule 16 and case law, Rule 16(d)(2) does not expressly allow dismissal of the Indictment as sanctions for failure to provide discovery. Here, Nwoke does not seek dismissal because the Government failed to provide discovery, but that such discovery was "late."

The Court's reading of the Government's September 16, 2022 letter to defense counsel shows that the discovery provided relate to Jencks materials. As noted above, under the Jenck's Act, the government need not provide statements or reports of witnesses until the witness "has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). It appears, therefore, that the disclosure of Jencks related materials was provided to the defense earlier than what is required under the Act. In addition, any dismissal under *Brady* only applies to exculpatory information that was not disclosed, and not to any delay of the disclosure of exculpatory information. *United States v. Ward,* 806 F.2d 658, 665 (6th Cir. 1986).

Regarding disclosures under *Brady*, as noted above, the Sixth Circuit has held that the Jencks Act controls the timing of *Brady*-related disclosures if the materials relate to Jencks Act materials. If any of the *Brady*-related disclosures are related to

Jencks Act materials, then, as set forth in the Jencks Act, such disclosure need not be required until after the Government's witness has testified.

Any Jencks or *Brady* materials disclosed by the Government prior to its witness completing his or her testimony, is not late, but rather earlier than required by the Jencks Act. Nwoke's Motion to Dismiss based on late discovery is denied.

## III. MOTION IN LIMINE RE SCRIPTS (#32)

Nwoke seeks to exclude the introduction of certain prescription slips written in 2010, which are copies and not the originals. Nwoke claims the originals are not in the possession of the Government and the location of the originals are unknown. Nwoke asserts that the copies of the prescriptions should not be admitted into evidence since there is no chain of custody to prove the authenticity of the copies and the copies were not obtained by a reliable source. Nwoke asserts that the Government cannot prove the authenticity of the copies under Rule 901(a) of the Rules of Evidence. Nwoke also asserts that the Government should not be able to introduce the evidence under Rule 1003 because there is a genuine question about the original's authenticity. Once the prescriptions are submitted to the pharmacy to fill, copies of the prescriptions are usually not kept, which raises real questions about the authenticity of the prescriptions.

Nwoke also claims the prescriptions are not relevant because they were not

issued for the tax year involved in this case. Nwoke seeks exclusion under Rule 404 of the Rules of Evidence and no notice has been given to Nwoke as required under Rule 404(b)(3).

The Government responds that the co-conspirator maintained photocopies of at least a portion of the prescriptions he purchased from Nwoke. Law enforcement officers executing search warrants at the co-conspirator's facilities in connection with a separate investigation seized documents from the co-conspirator, including photocopies of the controlled substance prescriptions written by Nwoke. The Government argues that the seized prescriptions written by Nwoke direct from the co-conspirator's possession has evidentiary weight since it corroborates the statements made by the co-conspirator. The Government further argues that any "chain of custody" issue is for the jury to determine, but such can be established at trial through the testimony of the co-conspirator and law enforcement.

As to relevancy that the prescriptions actually existed, the Government claims that the Michigan Automated Prescription System (MAPS), a database run by the Michigan Department of Licensing and Regulatory Affairs that is used to monitor controlled substance prescriptions and track the corresponding dispensing of the controlled substances by pharmacies, confirms that many, if not all of the prescriptions underlying the photocopies seized from the co-conspirator were actually

filled.  The Government also argues that MAPS reveals that the dates on which those and other groupings of controlled substance prescriptions by Nwoke were filled corresponded with the dates of large cash deposits to Nwoke's bank accounts between 2010 and 2013.

Regarding a Rule 404(b) issue, the Government asserts that an exception to Rule 404(b) is evidence that describes the background circumstances that led to the commission of the crime.  In addition, the prescriptions are also admissible for purposes of establishing intent, plan, absence of mistake, and motive and is admissible under Rule 404(b) as argued by the Government.

In reply, Nwoke argues that the MAPS records do not necessarily match up with the copies of the prescriptions at issue, therefore the original prescription script should be available if the prescriptions were not filled.  Nwoke argues that the prescriptions are forged and present highly questionable authenticity and should not be allowed into evidence.  The 2010 prescriptions, according to Nwoke, are not relevant since it does not go to the tax years at issue in this case.

The rules of evidence provide: "[t]o prove the content of a writing, ... the original writing ... is required, except as otherwise provided in these rules or by Act of Congress." Fed.R.Evid. 1002. Duplicates—such as photocopies—may be admitted in place of an original "unless (1) a genuine question is raised as to the authenticity

11

of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed.R.Evid. 1003. Secondary evidence of the contents of an original document may be received if the original is lost or destroyed "unless the proponent lost or destroyed them in bad faith." Fed.R.Evid. 1004(1). According to the Advisory Committee, "[l]oss or destruction of the original, unless due to bad faith of the proponent, is a satisfactory explanation of nonproduction." Commentary to 1972 Amendments to Rule 1004.  A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity. *See United States v. Ross,* 703 F.3d 856, 885 (6th Cir. 2012); *United States v. Rose*, 522 F.3d 710, 715 (6th Cir.2008).  Unless a defendant can show a case where the Sixth Circuit excluded a copy of a document under Rule 1003, the copy should be admissible.  Ross, 703 F.3d at 885 ("[Defendant] does not cite, nor have we been able to find, a single case in which this Court excluded a copy of a document under Rule 1003. We do not believe this should be the first".)  If an accomplice can testify about the document, then a photocopy of the document is admissible.  *Id.*

In this case, Nwoke has not cited a case where a duplicate of a document has not been admitted.  Nwoke has also failed to show that the proponent of the documents–here the Government, lost or destroyed the originals in bad faith.  The Government is able to show that the photocopies were signed by Nwoke, based on a

comparison to MAPS and testimony of the co-conspirator.  Any arguments regarding co-conspirator's motive in testifying for the Government and whether the records found in MAPS cannot be matched, those arguments can be rebutted at trial on cross-examination by Nwoke.

Regarding prior bad acts, Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).  Courts have recognized the use of other crimes or other bad acts permissible as evidence at trial.  *United States v. Blankenship,* 775 F.2d 735, 739 (6th Cir. 1984).  A three-step inquiry as to admissibility of 404(b) evidence is used:  1) whether sufficient evidence exists that the prior act occurred; 2) whether the "other act" is admissible for a proper purpose under Rule 404(b); and, 3) determine whether the "other acts" evidence is more prejudicial than probative under Rule 403.  *United States v. Poulsen,* 655 F.3d 492, 508 (6th Cir. 2011).

Photocopies of the prescriptions do not constitute a prior bad act if those

involved the year of the tax years at issue in this case. However, as to photocopies of prescriptions dated prior to the tax year at issue, here 2011, the 2010 photocopies are admissible to show motive, opportunity, intent, preparation, plan, knowledge by Nwoke and the co-conspirator.

Based on the above and on the Court's various rulings at trial, Nwoke's Motion in Limine to preclude the photocopies of the prescriptions is denied.

## IV.   DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRESCRIPTIONS WRITTEN BY DEFENDANT (#46)

Nwoke argues that the testimony of Marcus Jenkins, a drug dealer who owned several nursing homes, should not be allowed. Jenkins' testimony would be that he paid Nwoke between $63,000 and $70,000 for prescriptions from mid-2010 until the fall of 2011 at $500 for each prescription. Nwoke claims that this would mean that at most, 140 prescriptions are involved. However, MAPS records indicate that there are a total of 24,372 prescriptions written by Nwoke from mid-2010 through the end of 2012. Nwoke argues that Jenkins' 140 prescriptions is about one-half of a percent of the total prescriptions Nwoke wrote during this time period. Nwoke claims that the Government's case is based on Jenkins' testimony that he purchased 140 prescriptions from Nwoke and that the money paid to him by Jenkins was not reported in Nwoke's tax returns.

Nwoke argues that the Government cannot claim to the jury that others were

14

also buying prescriptions from Nwoke, perhaps up to the 24,372 prescriptions found in the MAPS records.  This evidence should not be allowed because it does not prove that Nwoke sold prescriptions to persons other than Jenkins.  Nwoke seeks to exclude that 24,372 prescriptions were written by Nwoke, because it would result in unfair prejudice, confusion and misleads the jury and should not be admitted under Rule 403. Nwoke should not be convicted on the fact that he wrote a lot of prescriptions.

The Government responds that the MAPS records are business records by the State of Michigan and is admissible.  The Government argues that the fact that Nwoke wrote prescriptions at all during the relevant time frame is relevant under Rule 401 because it tends to prove a fact of consequence.  The Government claims that evidence that is prejudicial only in that it paints a defendant in a bad light is not unfairly prejudicial under Rule 403.  The Government asserts that Nwoke has not explained why he belies evidence that he wrote thousands of prescriptions to hundreds of people is, but itself, unfairly prejudicial.  Nwoke's defense at trial is that he wrote for more legitimate prescriptions for legitimate medical purposes, rather than illegal sale, in which, argues the Government, the MAPS data is not unfairly prejudicial.  The Government argues that the volume of controlled substance prescriptions that Nwoke wrote is relevant to the Government's theory that Nwoke sold at least portion of those prescriptions and did not report nor paid any taxes on that income.  The Government

15

further argues that in false tax return cases alleging unreported income, evidence of a defendant's crimes that generated the unreported income do not implicate Rule 404(b), citing *United States v. Tarwater*, 308 F.3d 494, 516-17 (6th Cir. 2002).

Applying the three-step inquiry regarding "other acts," Nwoke does not dispute that he wrote the 24,000+ prescriptions noted in MAPS.  The "other acts" of writing prescriptions is admissible to show motive, preparation, etc.  As to whether the "other acts" is more prejudicial than probative, it could be that showing 24,000+ prescriptions written in a certain time frame could be prejudicial, but such might be more probative in the scheme alleged by the Government that Nwoke wrote prescriptions for a fee.  Nwoke on cross examination can show that many or most of the 24,000+ prescriptions written could have been for proper medical purposes and that any deposits into his account may or may not correspond to the number of prescriptions written.  The Court denies without prejudice, Nwoke's Motion in Limine to exclude evidence of prescriptions written, pending further testimony at trial.

## V.   DEFENDANT'S MOTION TO COMPEL GOVERNMENT TO PRODUCE COMPLETE RECORD OF PRESCRIPTIONS WRITTEN BY ALL PROVIDERS (#47)

Nwoke seeks for the Government to issue subpoena documents on behalf of Nwoke.  Nwoke claims that if the Court allows the MAPS records showing the 24,000+ prescriptions were written by Nwoke, he has subpoenaed the State asking for

the information from 2010 through 2021 for Nwoke, Carmen Laura Cardona, Carlton Dawes, N.P.  Nwoke argues that the records for Cardona and Dawes, who worked with Nwoke at his medical practice, would show that they also visited patients at the same locations and wrote prescriptions.  This evidence would discredit the Government's claim that all of Nwoke's prescriptions were written in return for ash payments from drug dealers and it would show that Nwoke, a pain management doctor, would consistently write this types of prescriptions for other patients, which the Government claims were only written for drug dealers.  Nwoke claims the State has refused to produce the documents under MCL 333.7333a(2).   The State had responded that to the extent that Nwoke is seeking MAPS records, it is prohibited by the statute from releasing the reports to Nwoke.  Nwoke claims that the State only allows the information to governmental employees.

The Government did not file a written response to this motion, but this issue was argued by the parties on September 6, 2022.

MCL 333.7333a((2) provides:

Notwithstanding any practitioner-patient privilege, the director of the department may provide data obtained under this section to all of the following:
(a) A designated representative of a board responsible for the licensure, regulation, or discipline of a practitioner, pharmacist, or other person that is authorized to prescribe, administer, or dispense controlled substances.
(b) An employee or agent of the department.
(c) A state, federal, or municipal employee or agent whose duty is to

17

enforce the laws of this state or the United States relating to drugs.

(d) A state-operated Medicaid program.

(e) A state, federal, or municipal employee who is the holder of a search warrant or subpoena properly issued for the records.

(f) A practitioner or pharmacist who requests information and certifies that the requested information is for the purpose of providing medical or pharmaceutical treatment to a bona fide current patient.

(g) An individual with whom the department has contracted under subsection (7).

(h) A practitioner or other person that is authorized to prescribe controlled substances for the purpose of determining if prescriptions written by that practitioner or other person have been dispensed.

(I) The health care payment or benefit provider for the purposes of ensuring patient safety and investigating fraud and abuse.

MCL § 333.7333a.

None of the above appears to allow Nwoke access to the data from MAPS, especially another practitioner's records. Nwoke has not provided any authority which allows this Court to order the Government to issue a subpoena, on behalf of a defendant, for certain records kept by the State. Nwoke also has not provided any authority that allows an order by a court which results in the State violating the State's own statute. Nwoke's motion is denied.

## VI.    DEFENDANT'S MOTION IN LIMINE TO PREVENT INTRODUCTION OF PRIOR BAD ACTS (#53)

Nwoke seeks to exclude the sales of prescription evidence which occurred in 2007 or 2009 to Marcus Jenkins because such are prior bad acts to the acts alleged in the 2011, 2012 and 2013 tax years at issue. The Government did not file a written

response to this motion.

Applying the three-step inquiry under Rule 404(b), there is sufficient evidence that shows the prior act occurred.  The prior acts of selling prescriptions in 2007 or 2009 could be used to show motive, intent, pattern, etc.  As to whether it would be more prejudicial, it is prejudicial to Nwoke, but may be more probative under Rule 403 as a pattern of Nwoke to sell to a co-conspirator for several years prior to the years at issue.  However, it is noted that the actual charge in this case is tax evasion by Nwoke, and not necessarily a conspiracy charge with the co-conspirator to commit tax fraud.  The Court denies the motion without prejudice, pending any further evidence at argument at trial.

## VI.   DEFENDANT'S MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY (#67)

Nwoke objects to the Government's Notice of Expert Witness Testimony and moves to exclude such testimony.  No written response was filed by the Government to the motion.

Nwoke argues that the Notice does not provide him with a fair opportunity to prepare cross-examination of the witness because the Notice is too vague and overbroad.  Nwoke asserts the Notice was given on the first day of trial, which gives him no time to prepare for cross-examination.  The Notice also does not give the basis of the opinions.

As to the testimony of Joyce Holbdy, Nwoke notes that she is expected to testify generally about bookkeeping and accounting and the use of source documents, but that the summary of the testimony does not say what her opinion will be. Nwoke requests a *Daubert* hearing. Ernest Turken, Nwoke notes, is expected to testify about the same things as Ms. Holbdy, but that the summary does not describe his opinion or the basis for it. Sheryl Maxwell, according to Nwoke, is to testify about the responsibilities and role of an auditor, but that there is nothing that specifies what her opinion will be. Nwoke asserts that these witnesses are both fact and expert witnesses and that this is disfavored by the Sixth Circuit under *United States v. Young*, 847 F.3d 328 (6th Cir. 2017).

Federal Rule of Evidence 701 states that if a witness is not testifying as an expert, "an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The proponent of this testimony must establish that all three requirements are met. *United States v. Kilpatrick,* 798 F.3d 365, 379 (2015). A witness may offer an opinion is based on personal experience under Rule 701(a). The witness may also offer an opinion if such is helpful to determine a fact in issue, but should not testify to reach

a conclusion which the jury is competent to reach on their own or speculate or expressing a conclusion as to a defendant's guilt. *Id*. A witness under Rule 701 also should not conflate an expert and lay opinion testimony without first satisfying the standard for expert testimony under Rule 702.

Rule 702 of the Rules of Evidence governs the admissibility of expert testimony. The trial court must determine whether the expert meets three requirements: 1) that the witness must be qualified by "knowledge, skill, experience, training or education;" 2) the proffered testimony is relevant and "will assist the trier of fact to understand the evidence or to determine a fact in issue;" and, 3) the testimony is reliable in that it is based on scientific, technical or other specialized knowledge. Fed. R. Evid. 702; *In re Scrap Metal Antitrust* Litigation, 527 F.3d 517, 529 (6th Cir. 2008). As to the third requirement, in *Dauber v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), the United States Supreme Court set forth factors to be considered in determining whether to admit expert testimony as reliable. The four factors are: 1) whether a theory or technique can be (and has been) tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error in using a particular and scientific technique and the existence and maintenance of standards controlling the technique's operation; and 4) whether the theory or technique has been generally accepted in the particular

21

scientific field.  Id. at 593-94.  The factors are neither definitive, nor exhaustive, and may or may not be pertinent to the assessment in any particular case.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  The factors will often be appropriate in determining reliability.  *I*d. at 152.  The trial court has broad latitude to determine whether these factors are reasonable measures of reliability in a particular case.  *Id*. at 153.  The test of reliability is "flexible," and the *Daubert* factors do not constitute a definitive checklist or test and may not be dispositive in every case.  *In re Scrap Metal*, 527 F.3d at 529.  "Nothing in either Dauber or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and opinion proffered."  *GE v. Joiner*, 522 U.S. 136, 146 (1997).

Based on the Notice submitted by the Government (ECF No. 66), it appears that all three witnesses are able to testify under Rule 701 as to their own experiences, that their testimony could be helpful to understanding the issues before the jury and in determining a fact in issue.  If any of the opinions are based on scientific, technical, or other specialized knowledge, then Rule 702 governs.

Upon review of the three witness' summaries (ECF No. 66), it appears all three could be qualified based on their "knowledge, skill, experience, training or education"

22

in the area they are testifying under, that the proffered testimony is relevant and "will assist the trier of fact to understand the evidence or to determine a fact in issue."  As to whether their testimony is reliable, it must be shown that such testimony is based on scientific, technical or other specialized knowledge.  In light of their experience and educational background, it may well be that the three witnesses' testimony as "experts" are based on "technical" or "other specialized knowledge" in bookkeeping, accounting or tax matters.

The Court overrules Nwoke's Objection and denies without prejudice the Motion to Exclude Expert Witness Testimony, pending any further evidence and arguments at trial.

## VII.   RENEWED MOTION FOR ORDER ALLOWING WITNESSES TO WEAR CLEAR FACE SHIELDS (#69)

This issue was argued at different times during trial.  For the reasons set forth on the record, the Court denies the motion.

## VIII.  ORAL MOTION FOR ACQUITTAL (10/17/2022)

After the Government presented its case to the jury, Nwoke moved for acquittal under Rule 29 of the Rules of Criminal Procedure.  The Government opposed the motion.  Rule 29 states,

> **(a) Before Submission to the Jury.** After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of

23

acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

**(b) Reserving Decision.** The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

Fed. R. Crim. P. 29(a) and (b). In evaluating the proofs under Rule 29, the motion must be denied "if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Canan*, 48 F.3d 954, 962 (6th Cir. 1995); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The credibility of the witnesses is in the exclusive province of the jury. *United States v. Bailey,* 553 F.3d 940, 946 (6th Cir. 2009).

The Court, having viewed the evidence in the light most favorable to the Government, finds that the Government has presented evidence that would allow the jury to find Nwoke guilty beyond a reasonable doubt. The Government presented the

testimony of Marcus Jenkins as to the acts by Nwoke regarding selling prescriptions, the testimony of the accountants hired by Nwoke, testimony regarding the MAPS data, and others which could support a finding of guilt as to Nwoke's scheme to sell prescriptions and that income from the scheme were not reported on Nwoke's tax filings for the years alleged in the Indictment. Nwoke's oral motion for judgment of acquittal is denied.

## IX.    DEFENDANT'S MOTION FOR DECLARATION OF MISTRIAL (#76)

The Court, having declared a mistrial in this matter because the jury remained deadlock, grants the defense's motion, but not for the reasons argued in his brief, but for the reasons set forth on the record.

## X.    CONCLUSION/ORDER

For the reasons set forth above and on the record at various times during trial,

IT IS ORDERED that Defendant's Motion to Dismiss to Dismiss Indictment for insufficiency of the evidence (ECF No. 52, 9/16/22) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Because of Very Late Discovery Production (ECF No. 56, 9/17/22) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion in Limine re Scripts (ECF No. 32, 12/9/21) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion in Limine to Exclude

Evidence of Prescriptions Written by Defendant (ECF No. 46, 8/19/22) is DENIED without prejudice.

IT IS FURTHER ORDERED that Defendant's Motion to Compel Government to Produce Complete Record of Prescriptions Written by all providers (ECF No. 47, 8/30/2022) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion in Limine to Prevent Introduction of Evidence of Bad Acts (ECF No. 53, 9/16/22) is DENIED without prejudice.

IT IS FURTHER ORDERED that Defendant's Motion to Exclude Expert Witness Testimony (ECF No. 67, 9/20/22) is DENIED without prejudice.

IT IS FURTHER ORDERED that Defendant's Renewed Motion for Order Allowing Witnesses to Wear Clear Face Shields (ECF No. 69, 9/21/22) is DENIED.

IT IS FURTHER ORDERED that the Oral Motion for Acquittal (10/17/22) is DENIED.

IT IS FURTHER ORDERED that the Motion for Declaration of Mistrial (ECF No. 76, 10/26/22) is GRANTED for the reasons set forth on the record, and not for the reasons as argued by Defendant in his brief.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

Dated: January 26, 2024

26